# RIPLEY *v.* UNITED STATES.

# UNITED STATES *v.* RIPLEY.

### APPEALS FROM THE COURT OF CLAIMS.

Nos. 887, 888.  Submitted March 10, 1911.—Decided April 24, 1911.

This court may not draw an inference of bad faith on the part of a government inspector unless the findings are so clear on the subject as to take the inference beyond controversy.

It is the duty of the Court of Claims in dealing with the question of bad faith on the part of a government inspector to explicitly find the facts in regard to that subject.

The Court of Claims should find as a fact whether or not complaints were made to the proper officers as to improper conduct on the part of subordinates, and if made, when and what action was taken thereon.

Where proper findings are not made by the Court of Claims on specific · matters to enable this court to properly review the judgment, the record will be remanded to that court for additional findings as to such matters, *United States* v. *Adams*, 9 Wall. 661; and so ordered in this case, with instructions to return to this court with all convenient speed.

45 C. Cl. 621, remanded with instructions.

THE facts, which involve the construction of a contract for public work with the United States and the validity of claims made by the contractor thereunder, are stated in the opinion.

*Mr. William H. Robeson, Mr. Benjamin Carter* and *Mr. F. Carter Pope* were on the brief, for Ripley.

*Mr. Assistant Attorney General John Q. Thompson* and *Mr. Philip M. Ashford*, Attorney,for the United States.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

These are cross appeals from a judgment entered by the Court of Claims against the United States and in favor of Henry C. Ripley. The claim of Ripley was based upon a written contract between himself and the United States, executed on April 6, 1903, containing numerous stipulations, by which in substance Ripley agreed to furnish materials for and do certain jetty work at Aransas Pass, Texas, authorized by an act approved June 13, 1902 (32 Stat. 340).

In his amended petition Ripley set forth numerous items of damage, aggregating $45,930.00, which it was asserted resulted from violations by the United States of the terms of the contract. Judgment was entered against the United States for $14,732.05. 45 Ct. Cl. 621. Ripley prosecuted this appeal in order to obtain an increased allowance,

while the United States by its cross appeal seeks a reversal
of the judgment.

Among other things it was provided in paragraph 61 of
the specifications as follows:

"Between Stations 20 and 27 and from the vicinity of
Station 55 seawards the method of construction shall be
as follows: A mound of small riprap shall first be built up
over and around the existing structure to about one foot
elevation.  When in the judgment of the U. S. agent in
charge this mound has become sufficiently consolidated,
its gaps and interstices shall be filled and its crest levelled
with small riprap, generally one man stone.  Large blocks
shall then be bedded in crest of mound in two rows break-
ing joints with their longest dimensions parallel to the axis
of jetty in such manner that voids under the placed blocks
will be at a minimum, and side slopes and remainder of
crest shall then be covered with large riprap."

A large sum was demanded by Ripley upon the con-
tention that the completion of the work was greatly de-
layed owing to the fact that "On the portion of the line
where no foundation had previously been laid, and where
petitioner therefore placed the foundation materials, said
Captain Jadwin and the subordinate officers in charge for-
bade and restrained petitioner from imposing the cap
blocks until long after the foundation, in their judgment
and, in fact, had become sufficiently consolidated and
they had caused the crest to be levelled."  On this branch
of the case the Court of Claims found as follows:

## "VII.

"In the performance of said work it was advantageous
to claimant to have his employees operate on the lee side
of the structure where they could be protected from the
action of the rough seas, and for this purpose it was de-
sirable that he be allowed to impose the crest block on the
top of the core as rapidly as possible, so that the waves

could not pass over it and interfere with the workmen, and
thus prevent delay in the completion of the contract. The
Aransas Pass Harbor Company had laid the foundation
for the entire jetty and for 2800 feet, that is, between Sta-
tions 27 and 55, the entire core of the structure had been
built up, and between Stations 27 and 40 the crest blocks
had been laid. The foundation and the core thus pre-
viously constructed were fully consolidated when the con-
tract with claimant was let.

"When claimant had completed from 100 to 200 feet of
the core he requested from the inspector in charge per-
mission to begin to lay crest blocks which was refused on
the ground that the core had not consolidated. By the
end of December, 1903, claimant had completed 400 to
500 feet of the core and again he requested permission to
impose the crest blocks. Said inspector refused and con-
tinued to refuse permission to lay said crest blocks until
May, 1904, at which time between 1400 and 1500 feet of
the core had been repaired and completed. Commencing
in October, 1903, when about 300 feet of the core had been
built up to the required elevation, slope stones were laid
on the jetty which afforded some protection from the
action of the waves to the rip-rap already constructed, but
not as much protection as the crest blocks would have
afforded. When claimant was thus laying the slope stones,
and throughout December, 1903, and January, February,
March, and April, 1904, it was manifest that large parts of
the work done by him had fully settled and consolidated.
If claimant had been permitted to lay the crest blocks from
that time on as the work progressed there would have re-
sulted an additional protection which would have enabled
him to work 60 days more than he did between that time
and May 7, 1904, date the first crest blocks were laid.
When claimant was seeking permission to lay the crest
blocks as aforesaid the inspector, in refusing same, alleged
as a reason that the jetty had not had sufficient time to

consolidate, and it does not appear that any other reason was at any time given by said inspector for so refusing."

In the brief of counsel for Ripley it is said:

"This court will perceive that, with the exception of *two matters* of minor importance to which we will hereafter briefly refer, the main complaint involved in this appeal is the erroneous application of Finding VII to the judgment. The Court of Claims in Finding VII has found that as early as October, 1903, claimant was endeavoring to obtain permission to lay the crest blocks on the core of which 'it was *manifest* that large parts . . . had fully settled and consolidated.' 'Manifest,' according to all the dictionaries, means 'clear,' 'plain,' 'evident to the eye and understanding.' So that if it was 'manifest' that the core had fully settled and consolidated, it naturally follows that this was known to the inspector and that the denial of the permission to lay the crest blocks (which the claimant had the right to do upon the consolidation of the core) was such a fraud as entitles him to recover the damages he has thereby suffered. The claimant's right to recover could not be more complete had the Court of Claims found in so many words that the decisions of the Government's officer were grossly fraudulent and made in bad faith. Apparently the Court of Claims, with delicate consideration for the feelings of the engineer department, chose to employ different, though just as effective language. But for the denial of this permission to lay these crest blocks, they would have been laid and thus substantially all of the delay in the completion of the contract would have been avoided."

We are of opinion, however, that while it may be open to conjecture that the word "manifest" as used by the court in its finding is susceptible of the broad significance which the argument thus imputes to it, we do not think such meaning is so clear and free from doubt as to justify us in concluding that there was bad faith on the part of the Government inspector in charge of the work. We say

this because it is certain that we may not draw the inference of bad faith unless the findings are so clear on the subject as to cause such inference to be plain beyond controversy. It follows, therefore, that the finding below on the subject of the knowledge and good faith of the inspector is so incomplete and inconclusive as to render it impossible for us to decide the cause without grave risk of doing wrong to the plaintiff or serious injury to the Government. It was the clear duty of the court below, in dealing with the question of bad faith on the part of the Government inspector, not to leave that subject dependent upon an ambiguous expression susceptible of being construed one way or the other, but to explicitly find whether or not that which it states was manifest was or was not known to the inspector and whether that subordinate official acted in good or bad faith in the various refusals recited as having been made to the laying of the crest blocks and to the reasons assigned for those refusals. Further, the court should have found as a fact whether or not complaint was made by the claimant, either to the engineer officer in charge or to the chief of engineers, as to the action of the subordinate inspector in refusing the requested permission, and if complaint was made, when it was made and what action was taken thereon.

Following the approved practice (*United States* v. *Adams*, 9 Wall. 661), the following order will be made:

Ordered: That the record in this case be remanded to the Court of Claims, and that said court be instructed to find and certify to this court, as matters of fact, in addition to the facts found and certified in said record:

First. Whether, when the claimant was laying the slope stones and during the months of December, 1903, and January, February, March and April, 1904, as recited in Finding VII, the inspector in charge knew "that large parts of the work done by the claimant had fully settled and consolidated."

Second. Whether in the various refusals to permit the laying of crest blocks stated in Finding VII the inspector in charge acted in good faith.

Third. Whether at any time the claimant notified the engineer officer in charge or the chief of engineers that the inspector in charge wrongfully refused to permit the laying of the crest blocks, and if such notice was given, whether it was oral or written, when the notice or notices were given, and what action, if any, was taken by such superior officer.

And it is further ordered that the said record, with the said additional findings of fact, be returned to this court with all convenient speed.